Filed 1/31/24  Romanowicz v. Starr CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| BARBARA ROMANOWICZ et al.,<br><br>        Plaintiffs, Cross-defendants and Respondents,<br><br>v.<br><br>MOLLIE STARR et al.,<br><br>        Defendants, Cross-complainants and Appellants. | A166238<br><br>(Alameda County<br>Super. Ct. No. RG21092642) |

This is an appeal from final judgment in a property dispute between next-door neighbors in the City of Berkeley.  Following a bench trial, the trial court sided with plaintiffs/cross-defendants, Barbara Romanowicz and Mark Jonikas (Romanowicz/Jonikas), by (1) recognizing their right to a prescriptive easement for ingress and egress along a two-foot strip of land on the property of defendants/cross-complainants, Mollie and Adam Starr (Starrs), and (2) prescriptively extinguishing a recorded easement favoring the Starrs' property to the extent it allowed for vehicular use of Romanowicz/Jonikas's driveway.  The court thus entered judgment for Romanowicz/Jonikas on both the complaint and the cross-complaint.

The Starrs challenge the judgment on the grounds that (1) the trial court lacked authority to effectively give Romanowicz/Jonikas exclusive

1

ownership rights over the two-foot strip on the Starrs' property under the guise of granting them a prescriptive easement; (2) the trial court lacked authority to completely extinguish their recorded easement over Romanowicz/Jonikas's driveway without the requisite evidence of adverse possession; (3) the judgment violated the bona fide purchaser doctrine; and (4) the judgment on the cross-complaint was inconsistent with the court's findings. We find no merit to these arguments and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Romanowicz/Jonikas have owned and resided at 2954 Hillegass Avenue, a parcel of real property in the City of Berkeley, since 1992. The Starrs are Romanowicz/Jonikas's next-door neighbors. They purchased 2956 Hillegass Avenue, the adjacent property to the south of 2954 Hillegass Avenue, in 2019.

For decades, a fence stood on 2956 Hillegass immediately to the south of its border with 2954 Hillegass. John Thacher Hurd, from whom Romanowicz/Jonikas purchased 2954 Hillegass, understood this fence sat along the property line. Hurd constructed a gate across the driveway and positioned the gate's southern post at the end of this fence. Hurd and his family then regularly used the two-foot strip of land in front of the gate to enter and exit their backyard, as did Romanowicz/Jonikas once they moved in.

In 2019, the Starrs learned, during the course of drawing up remodeling plans, that this fence was in fact on 2956 Hillegass, approximately two feet from the actual property line between 2954 Hillegass and 2956 Hillegass. In January 2021, the Starrs, well into their remodeling plans, shared this information for the first time with Romanowicz/Jonikas. Shortly thereafter, the Starrs unilaterally relocated the fence to the property

2

line, which prevented Romanowicz/Jonikas from accessing their backyard through the gate Hurd built across their driveway, as the occupants of 2954 Hillegass had done for well over 30 years.

The Starrs also learned that a 1909 grant deed identified an easement that gave the owners of 2956 Hillegass a right-of-way over an eight-foot parcel on 2954 Hillegass immediately to the north of the property line for egress and ingress (hereinafter, recorded easement). This recorded easement was also mentioned in the grant deed by which the Starrs took title to their property from the previous owner, Ruth Shelby. However, this recorded easement was not memorialized in the deeds by which Romanowicz/Jonikas and their predecessor in interest (the Hurds) took title to 2954 Hillegass. Both Romanowicz/Jonikas and the Hurds had for decades regularly parked one or more of their vehicles across this eight-foot parcel of land that encompassed their driveway.

On October 1, 2021, Romanowicz/Jonikas filed the operative fourth amended complaint[1] against the Starrs, asserting causes of action relating to both the two-foot strip of land on the Starrs' property (2956 Hillegass) that extended the length of the fence that sat between the two properties (hereinafter, two-foot strip) and the eight-foot driveway on Romanowicz/Jonikas's property (2954 Hillegass) (hereinafter, driveway). As to the two-foot strip, this complaint sought (1) to quiet title to a prescriptive easement for ingress and egress to Romanowicz/Jonikas's backyard over the two-foot strip (first cause of action), (2) a judicial declaration that Romanowicz/Jonikas own this prescriptive easement (third cause of action), and (3) an injunction prohibiting the Starrs from interfering with their use and enjoyment of the two-foot strip (fifth cause of action). As to the driveway,

_____

[1] This action was originally filed in March 2021.

3

the complaint sought (1) to quiet title to Romanowicz/Jonikas's property on the theory that any easement that may have existed over the driveway in favor of 2956 Hillegass was extinguished by the 2954 Hillegass owners' prescriptive use of the driveway (second cause of action), (2) a judicial declaration that the recorded easement was extinguished (fourth cause of action), and (3) an injunction prohibiting the Starrs from interfering with Romanowicz/Jonikas's use of the driveway (sixth cause of action).[2]

On September 9, 2021, after the original complaint was filed, the Starrs filed a cross-complaint asserting five causes of action, each relating to the recorded easement giving the owners of 2954 Hillegass the right of ingress and egress over the driveway. By this cross-complaint, the Starrs sought on various theories to quiet title to this easement.

Trial began on March 2, 2022, at which the following largely undisputed evidence was presented.

## I.     *The Two-foot Strip of Land on 2956 Hillegass.*

Romanowicz/Jonikas testified that nearly every day, and sometimes multiple times a day, they openly and continually walked or cycled along the fence and across the two-foot strip to access their backyard.[3] In addition, Romanowicz/Jonikas and their children transported bicycles and, on occasion, their vehicle over this two-foot strip while entering or leaving their backyard. Romanowicz/Jonikas never sought or received permission from their neighbors at 2956 Hillegass to use this two-foot strip, and their neighbors never objected to their use.

---

[2] The fourth amended complaint also asserted a cause of action for libel that settled prior to trial.

[3] The small gate built by Hurd crossed the end of 2954 Hillegass's driveway and opened directly onto the two-foot strip.

The previous owner of 2954 Hillegass, John Thacher Hurd, likewise testified that, during their 12-year residence, he and his wife, co-owner Olivia Hurd, openly and regularly (often multiple times a day) used the two-foot strip to access their backyard. When they took extended vacations, the Hurds stored their car in the backyard after driving it across the two-foot strip and through the gate. The Hurds never sought or received permission to do so, and their neighbor never objected.

Similarly, Romanowicz/Jonikas's gardeners, Trang Vo and Huong Hong Thi Cao, testified that for at least 15 years, when performing gardening services at 2954 Hillegass twice monthly, they used the two-foot strip to enter and exit Romanowicz/Jonikas's backyard. In performing these services, Vo and Cao regularly pushed a lawn mower, leaf blower, waste bin and other equipment in and out of the backyard via the two-foot strip.

The prior owner of 2956 Hillegass, Ruth Shelby, and her partner, Rodger March, testified that they never gave or denied permission to the owners of 2954 Hillegass to use the two-foot strip because they assumed the two-foot strip was part of the 2954 Hillegass property. In fact, based on this assumption, Shelby seldom paid attention to who was using the two-foot strip or how it was being used.

## II. *The Driveway on 2954 Hillegass.*

Romanowicz/Jonikas testified that nearly every day for the last 30 years, they parked one or more cars in their driveway. They did not seek or obtain permission to do so. When Romanowicz/Jonikas were away, their friends, guests, tenants, and gardeners parked in the driveway. Romanowicz/Jonikas were unaware of any recorded easement permitting the owners of 2956 Hillegass to use the driveway until the dispute arose with the

5

Starrs regarding the position of the fence along the boundary between their two properties.[4]

Photographic evidence and multiple witnesses, including Romanowicz/Jonikas's gardeners (Vo and Cao), their friend (Nancy Lowenthal), and the previous owner of 2954 Hillegass (Hurd), all confirmed that for approximately 40 years one or more vehicles associated with 2954 Hillegass were regularly parked in the driveway.[5]

Mollie Starr, in turn, admitted she and her husband purchased street parking permits for their cars. They did not use the driveway to park their cars or drive them into or out of their backyard to park them.

Similarly, the Starrs' predecessor in interest, Shelby, who lived at 2956 Hillegass for 34 years, testified that she and her partner (March) knew Romanowicz/Jonikas regularly parked in the driveway. Shelby and March understood that on the rare occasion they wanted to get a car into or out of their backyard via the driveway, they could do so only with Romanowicz/Jonikas's permission.[6] However, this need arose only once or

---

[4] Jonikas testified that, in approximately 2008, Shelby mentioned a carport in her backyard, which prompted him to review title documents at the county clerk-recorder's office to determine whether an easement existed. However, Jonikas found no mention of an easement in any of the deeds to his property or in a 1951 deed conveying 2956 Hillegass, so he assumed no easement existed.

[5] Hurd, who owned 2954 Hillegass for over 10 years before Romanowicz/Jonikas purchased the property, testified that, similarly to Romanowicz/Jonikas, he and his wife parked one or more cars on the driveway almost every day.

[6] Shelby believed there may have been an easement or other agreement that permitted her to use the driveway to drive into her backyard with Romanowicz/Jonikas's permission. As the trial court noted, however, Shelby's belief "does not describe any right to use land that one could define as an 'easement'. Rather, it defines a relationship of adjoining property

twice a year, and when they asked Romanowicz/Jonikas for permission, they always received it.

### III. *Statement of Decision, Judgment and Appeal.*

On August 2, 2022, the trial court issued a judgment in favor of Romanowicz/Jonikas and against the Starrs.[7]  In this judgment, the court accepted Romanowicz/Jonikas's claims seeking to (1) quiet title to an easement by prescriptive use over and across the challenged two-foot strip for ingress to and egress from their backyard and (2) to quiet title to 2954 Hillegass and thereby extinguish any right of the owners of 2956 Hillegass to cross the driveway of 2954 Hillegass with a car or other vehicle wider than three feet.  The court maintained the right of the owners of 2956 Hillegass to cross the driveway by foot or vehicle less than three feet across.

The trial court also rejected the Starrs' cross-complaint seeking to quiet title to their unrestricted use of the driveway, finding "clear and uncontroverted" evidence that the recorded easement was extinguished by the prescriptive vehicular use of the driveway by Romanowicz/Jonikas and their predecessors.

---

owners where one could always seek permission to drive over the land of another."

[7] On April 20, 2022, after the parties filed proposed statements of decision and objections, the trial court issued the following order for supplemental briefing:  "The court will be making a finding that the 1909 written easement exists and that for at least the last forty years the servient tenement owners have openly, notoriously, and continually used the area of the easement in a manner adverse to the dominant tenement owner's ability to use the easement for the ingress and egress of cars but did not use the area of the easement in a manner that blocked pedestrian use for ingress and egress.

"The court seeks the parties' briefs on the query of whether the adverse use of the easement entirely extinguishes the easement, extinguishes the easement in part or does not extinguish the easement at all."

On August 2, 2022, the trial court thus entered judgment in favor of Romanowicz/Jonikas on both the complaint and the cross-complaint. The Starrs' timely notice of appeal of the judgment followed.

## DISCUSSION

The Starrs argue (1) the trial court lacked authority to award Romanowicz/Jonikas "exclusive use and possession" of the two-foot strip abutting the Starrs' fence under the guise of granting them a prescriptive easement; (2) the trial court lacked authority to completely extinguish their recorded easement over Romanowicz/Jonikas's driveway; (3) the judgment violated the bona fide purchaser doctrine; and (4) the judgment on the cross-complaint was inconsistent with the court's findings. We address each argument in turn *post*.

## I. *Legal Framework: The Law of Easements.*

"The fundamental law of easements provides that 'an easement conveys rights in or over the land *of another*. "An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property. To the creation of an appurtenant easement, two tenements are necessary, a dominant one in favor of which the obligation exists, and a servient one upon which the obligation rests." [Citations.]' [Citation.] 'Easements may be created by express words, by grant or reservation, usually by deed, by implication (Civ. Code, § 1104) (usually involving division of land); by necessity (3 Powell on Real Property, § 410) and by prescription . . . .' " (*Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1415–1416 (*Thorstrom*).)

Relevant here, the elements required to establish a prescriptive easement are: (1) open and notorious use (2) that is is hostile and adverse, and (3) continuous and uninterrupted for the five-year statutory period.

8

(*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 449 (*Felgenhauer*).) The elements required to establish title by adverse possession are the same as those required to establish a prescriptive easement but with the additional element of tax payment. (*Gilardi v. Hallam* (1981) 30 Cal.3d 317, 321; *Felgenhauer, supra*, 121 Cal.App.4th at p. 449.) "Proof of the elements required for adverse possession . . . gives a successful claimant *title* to property. A successful claimant of a prescriptive easement, by contrast, gains not title but the right to make a specific *use* of someone else's property." (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305 (*Mehdizadeh*).)

To establish an easement by prescription, " 'the requisite hostile possession and claim of right may be established when the occupancy or use occurred through mistake.' " (*Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057, 1077 (*Vieira*).) " 'Adverse use' means only that the claimant's use of the property was made without the explicit or implicit permission of the landowner." (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.)

"Whether the elements of a prescriptive easement have been established is a question of fact, which we review under the substantial evidence rule. [Citation.] 'In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.]' " (*Felgenhauer, supra*, 121 Cal.App.4th 445, 449.) Moreover, once the trial court orders relief, we review its judgment only for abuse of discretion. (*Richardson v. Franc* (2015) 233 Cal.App.4th 744, 751, 758 (*Richardson*) [trial court is "better equipped than we are to fashion equitable relief" and thus is afforded "considerable discretion"].)

## II.    *Prescriptive Easement over the Two-foot Strip.*

The Starrs first contend the trial court's grant of a prescriptive easement across the two-foot strip of their property in favor of Romanowicz/Jonikas violates principles of real property law.  They reason that, while easements are inherently nonpossessory and restricted interests, the easement granted by the court deprives them of all incidents of ownership of the two-foot strip.  We disagree.

The judgment grants Romanowicz/Jonikas and their successors in interest an easement over the two-foot strip[8] "for ingress and egress to from [*sic*] the backyard of the Dominant Tenement [2954 Hillegass] by motor vehicles, pedestrians, bicycles, rolling containers, and all manner of other vehicles and equipment."  To that end, the judgment also provides that "[the Starrs] and all successor owners and occupants of the Servient Tenement, are prohibited and permanently enjoined from blocking or otherwise interfering with use of the easement area by owners and occupants of the Dominant Tenement for ingress to and egress from the backyard of the Dominant Tenement."

In challenging this judgment, the Starrs accept the court's underlying finding that the elements of a prescriptive easement were met by the 40-plus years of adverse, open and continuous use of the two-foot strip by Romanowicz/Jonikas and their predecessors.  This acceptance is expected given the wealth of evidence supporting the court's finding, including the uncontroverted testimony from Romanowicz/Jonikas, Hurd, Shelby and

---

[8] The judgment refers to the two-foot strip as "that portion of the Servient Tenement [2956 Hillegass] more particularly described on Exhibit C attached hereto and hereby incorporated herein . . . ."  Exhibit C, in turn, includes a property map of 2954 and 2956 Hillegass with a drawing of the two-foot strip.

others.  The Starrs do, however, challenge the court's permanent injunction, insisting it allows the owners of 2954 Hillegass to "retain exclusive possession of the [Starrs'] property in perpetuity."  Not so.  The court's judgment was a proper exercise of its " ' "broad discretion [to] decid[e] the type of equitable relief to fit a case's particular circumstances" ' . . . ." (*Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 728 (*Husain*); see *Richardson, supra*, 233 Cal.App.4th at p. 751.)

As the Starrs' own case explains, "[a] successful claimant of a prescriptive easement . . . gains not title but the right to make a specific *use* of someone else's property."  (*Mehdizadeh, supra*, 46 Cal.App.4th at p. 1305.) Thus, "[a]n easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership."  (*Id*. at p. 1306.)  Applying these principles to the facts before it, the *Mehdizadeh* court reversed the grant of an easement because "[appellants] are fenced off from the property subject to the easement, and we question whether they can use, occupy, or enjoy it in any meaningful way. They have no access to the property.  The fence reduces the size and alters the shape of their lot, potentially creating problems with setbacks and building codes that could impede alterations to structures [appellants] might wish to make, and also potentially reducing the value or salability of their property.  The easement thus burdens [appellants'] property heavily, while leaving [appellants] only a minimal right to use it—enjoying air, light, and privacy rights."  (*Id*. at p. 1308.)

Our case differs.  The owners of the servient tenement (the Starrs) are not "fenced off from the property subject to the easement" with "no access to the property."  (Cf. *Mehdizadeh, supra*, 46 Cal.App.4th at p. 1308; see *Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1094 [" 'the landscaping

11

scheme of [defendant] has essentially co-opted the encroachment area to an exclusive use designed by [defendant]' "].)  Rather, the granted easement merely continues the permissive use of the two-foot strip that the owners of 2954 Hillegass have enjoyed for 40 or so years—crossing the strip of land to access their backyard through the gate Hurd constructed in the 1980's.

Moreover, the injunctive relief ordered by the trial court—to wit, "prohibit[ing] and permanently enjoin[ing] [the owners of 2956 Hillegass] from blocking or otherwise interfering with use of the easement area by owners and occupants of [2954 Hillegass] for ingress to and egress from the backyard of [2954 Hillegass]"—does no more than protect and preserve this right of permissive use.  The law of prescriptive easements allows just that. (*Silacci v. Abramson* (1996) 45 Cal.App.4th 558, 562 ["Every incident of ownership not inconsistent with the enjoyment of the easement is reserved to the owner of the servient tenement"].)

Contrary to the Starrs' suggestion, this injunction does not give Romanowicz/Jonikas exclusive possession and use of the Starrs' property.[9] The Starrs are only barred from obstructing or interfering with

_____

[9] The Starrs also complain that the judgment enjoins the successor owners of 2956 Hillegass.  However, "Civil Code section 1104 specifically provides that '[a] transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.'  'Where the easement is acquired by an implied grant, the scope of the easement is measured by the extent the property was obviously and permanently used at the time when the transfer was completed (Civ. Code, § 1104).  A purchaser of real property is bound to take notice of all easements or servitudes which are "apparent" upon inspection of the property [citations].' " (*Thorstrom, supra*, 196 Cal.App.4th at pp. 1421–1422.)

Romanowicz/Jonikas's *nonexclusive* right to use the two-foot strip in the same open and continuous manner they have enjoyed since moving in 30 years ago. (Cf. *Silacci v. Abramson, supra*, 45 Cal.App.4th at p. 564 [reversing an order for an "exclusive prescriptive easement" that gave plaintiff's land "completely [and] without reservation" to defendants].) As such, the Starrs may continue to use the two-foot strip in the same manner as both Romanowicz/Jonikas and their own predecessor, Shelby—mainly, for ingress and egress to the backyard—or in any other reasonable manner that does not interfere with their neighbors' permissive use.[10] The court's ruling was thus proper. (*Husain, supra*, 61 Cal.App.5th at p. 728; accord, *O'Banion v. Borba* (1948) 32 Cal.2d 145, 155 ["the judgment must be interpreted in the light of the use for which the easements were acquired by plaintiffs, and the right of defendants to make a reasonable use of their land subject to the easements thus acquired"].)

## III. *Partial Extinguishment of the Driveway Easement.*

The Starrs next contend the trial court "inexplicably took away a granted interest without authority" when it "partially divest[ed] [the Starrs] of the right to use the driveway for vehicular access to their backyard." We disagree.

The trial court found based on "clear and uncontroverted" evidence that by their use of the driveway "the Hurds and [Romanowicz/Jonikas] have, in sequence for over forty years, totally obstructed the owners of the Starr property from the use for ingress and egress to their rear yard with any car or other object larger than approximately three feet wide." The court thus

_____

[10] Shelby testified that she "freely walked over the easement to enter and leave her backyard over the entire time she resided in what is now the Starr property."

13

found a "prescriptive extinguishment" of the dominant tenement's easement right to drive a vehicle over the driveway. Accordingly, employing its equitable powers, the court ruled "the 1909 easement for ingress and egress from Hillegass Avenue to the rear yard of the Starr residence is extinguished to the extent that it involves the right to the ingress and egress of vehicles or anything else that could not pass by while the Romanowicz/Jonikas vehicle is parked in the eight-foot strip. It also follows that the easement is not fully extinguished, but rather, the right to ingress and egress continues for pedestrians, bicycles, other two wheel vehicles, garbage bins and other conveyance that are capable of passing through the easement while a car is parked on the easement totally obstructing any vehicle from the use of the eight-foot strip." This ruling, based on substantial evidence, was a proper exercise of the trial court's discretion.

"An easement or servitude created by grant cannot be lost by mere nonuse. (Civ. Code, § 811; [citation].) However, a recorded easement may be extinguished if the use of the servient tenement, the property burdened by the easement (Civ. Code, § 803), amounts to adverse possession of the easement, and nonuse by the dominant tenement may be a factor in determining whether possession has been adverse." (*Vieira, supra*, 8 Cal.App.5th at p. 1075.) Similarly, a recorded easement may be extinguished by the servient tenement owner's prescriptive use of the easement for the requisite statutory period. (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1181 [" '[t]he existence of a grant [easement] does not preclude the acquisition of greater rights by prescription' "]; *Currier v. Howes* (1894) 103 Cal. 431, 437 [where a deeded easement exists, "[n]othing short of a use by the owners of the premises over which it was granted, which is adverse to the enjoyment of such easement by the owner thereof, for the space of time requisite to create

14

a prescriptive right, will destroy the right granted"].)  This is what occurred here.

Again, the Starrs do not challenge the trial court's evidentiary finding that for 40 years the owners and occupants of the servient tenement, 2954 Hillegass, openly, adversely and continuously parked one or more vehicles in the driveway.  Instead, the Starrs argue that because they and their predecessors made *some use* of the recorded easement by walking along the driveway to access their backyard, the trial court erred by completely extinguishing it.  The Starrs frame this argument as a legal proposition: "The question is always whether the entire [recorded] easement should be extinguished or not."  This mischaracterizes the facts and the law.

Factually, the court did not completely extinguish the Starrs' rights under the recorded easement.  Rather, the court (1) recognized Romanowicz/Jonikas's " 'acquisition of greater rights by prescription' " to use the driveway for vehicular parking (*McBride v. Smith, supra*, 18 Cal.App.5th at p. 1181) and, simultaneously, (2) maintained the Starrs' right to use the driveway for ingress and egress "for pedestrians, bicycles, other two wheel vehicles, garbage bins and other conveyance that are capable of passing through the easement while a car is parked on the easement . . . ."

The court's ruling comports with the undisputed evidence that Romanowicz/Jonikas regularly parked in the driveway, the Starrs never used the driveway to drive cars or similarly sized vehicles into or out of their backyard, and Shelby and March rarely did so and only with Romanowicz/Jonikas's permission.  Its ruling also comports with the law of easements.  (See *Sevier v. Locher* (1990) 222 Cal.App.3d 1082, 1084, 1087 [upholding a finding that plaintiffs' deeded right-of-way over the driveway was extinguished by adverse possession while their utility easement over the

15

property survived where "[defendants'] use of their driveway 'was wholly inconsistent with the right of the plaintiffs and their predecessors to use it at will for entry upon their property' "]; cf. *Cottonwood Duplexes, LLC v. Barlow* (2012) 210 Cal.App.4th 1501, 1507, 1509 [reversing order partially extinguishing a recorded easement based not on prescriptive use or adverse possession but on the trial court's determination of the dominant tenement's "reasonable needs"].)

Finally, as a legal matter, the Starrs disregard our standard of review, which is as described *ante*—we affirm so long as the trial court's ruling was a proper exercise of its " ' "broad discretion [to] decid[e] the type of equitable relief to fit a case's particular circumstances" ' . . . ." (*Husain, supra*, 61 Cal.App.5th at p. 728.) Here, it was. Accordingly, the ruling stands.

## IV. *The Bona Fide Purchaser Doctrine Is Not Applicable.*

The Starrs further contend the judgment violates the bona fide purchaser doctrine. Again, they are wrong.

" 'The elements of a bona fide purchase are payment of value, in good faith and without actual or constructive notice of another's rights. Absence of notice is an essential requirement in order that one may be regarded as a bona fide purchaser. [Citation.]' [Citation.] ' "[A] bona fide purchaser for value who acquires his interest in real property without notice of another's asserted rights in the property takes the property free of such unknown rights. [Citations.]" [Citations.]' [Citation.] 'A person generally has "notice" of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact. [Citations.]' ([Citation]; see Civ. Code, § 19 ['Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which,

16

by prosecuting such inquiry, he or she might have learned that fact'].)" (*Zissler v. Saville* (2018) 29 Cal.App.5th 630, 642.)

The Starrs argue that as bona fide purchasers they were entitled to rely on the language of the recorded deed that gave them unrestricted use of the driveway, including for vehicular ingress and egress. In doing so, the Starrs claim to have been "without notice of any limitations on their use of the easement . . . ." Nonsense.

The trial court made an uncontested finding that Romanowicz/Jonikas and their predecessors in interest openly and continuously used the driveway easement in a manner adverse to the exercise of the easement by the Starrs and their predecessors in interest, for over 40 years. In addition, there was evidence the Starrs received a transfer disclosure statement from the seller when they purchased 2956 Hillegass which disclosed the recorded easement but also contained a statement that the property included no off-street parking, including no garage or carport. Consistent with this evidence, Mollie Starr testified that she and her husband purchased street parking permits for their cars when they moved in and did not use the driveway to park their cars or to drive them into or out of their backyard to park them.

Under these circumstances, we conclude the Starrs had actual knowledge of circumstances sufficient to put them on constructive notice that they did not, as they claim, have a right to unrestricted access to the driveway. (Civ. Code, § 19; *Zissler v. Saville, supra*, 29 Cal.App.5th at p. 642.) Their bona fide purchaser argument therefore fails.[11]

---

[11] In their reply brief, the Starrs fault the trial court for failing to make an express finding on their bona fide purchaser claim. Since the relevant facts are undisputed, the lack of an express finding below does not preclude this court from concluding as a matter of law that the Starrs were not bona fide purchasers. (*Fullerton Union High School Dist. v. Riles* (1983) 139

17

## V. The Judgment on the Cross-complaint Stands.

Lastly, the Starrs challenge the judgment against them on the cross-complaint to the extent it fails to recognize that they "prevailed on at least some aspect of the First Cause of Action . . . ." This challenge fails.

The cross-complaint's first cause of action sought to quiet title to the recorded easement in favor of the Starrs and, to that end, requested a judicial declaration that " 'Cross-defendants . . . have no right, tittle [*sic*], lien, claim or interest in the Subject Easement that has priority over the rights and interests of Cross-complainants . . . .' "

The trial court rejected this cause of action and entered judgment in favor of Romanowicz/Jonikas, after finding that for 40 years, use of the easement by the Starrs and their predecessors had been obstructed by Romanowicz/Jonikas and their predecessors, who parked their car on the easement and made it impossible for the Starrs and their predecessors to drive a vehicle from the street to the rear yard without first obtaining permission to do so. Based on this unchallenged finding, the Starrs were *not* entitled to what they sought by way of this cause of action—a declaration that Romanowicz/Jonikas had " 'no right, tittle [*sic*], lien, claim or interest' " in the recorded easement that had priority over the Starrs' rights and interests. The court thus properly entered judgment against them.

To the extent the Starrs are concerned this ruling fails to recognize the trial court did not fully extinguish their rights under the recorded deed, their concern is unfounded. The judgment explicitly states that "defendants, and their successors in interest as owners of [2956 Hillegass], are possessed of the

---

Cal.App.3d 369, 383 ["Where the question is one of law derived from undisputed facts, the appeal court is not bound by the trial court's finding on an ultimate issue"].)

18

right to the use of such right-of-way for access to the backyard of the property . . . by pedestrians and/or vehicles and containers not wider than three feet."

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A166238/*Romanowicz v. Starr*

19