[Civ. No. 7686. First Appellate District, Division One.—October 5, 1931.]

CLARENCE MYRAN et al., Appellants, v. K. G. SMITH, Respondent.

John F. Poole and H. E. Gleason for Appellants.

Don Marlin and Charles S. Feeney for Respondent.

PARKER, J., *pro tem.*—The action is one to quiet title. The defendants, other than K. G. Smith, are fictitious persons. Appearance was made by but one defendant, K. G. Smith, and the issues as joined were between this defendant and the plaintiffs. From a decree establishing title in defendant, plaintiffs appeal.

Before taking up the questions presented by appellants, we have the contention of the respondent to the effect that appellants failed to show any semblance of title in themselves and that therefore they cannot be heard to complain of the weakness of respondent's title. The argument of respondent is based upon the fact that the evidence supporting plaintiffs' title consisted of the official record of a deed conveying the property to them as executors, and a duly authenticated copy of decree of distribution vesting the estate in them as individuals. The burden of the argument is that the introduction of the record was improper and in itself insufficient in the absence of proof of loss of the original conveyance. As far as the record before us discloses, no objection was made to the offer or the admission in the court below. ■ The only record we have is the certified transcript on appeal, which recites merely that plaintiffs introduced in evidence the duly acknowledged deed, in deed book 2824, records of Los Angeles County, conveying to them the property in controversy. From the bare record we must assume, if preliminary proof were necessary to entitle the record to admission, that such proof was offered prior to the admission of the record. ■ And further, in the absence of any objection or motion to strike, secondary evidence may become primary. The rule has always been

that secondary evidence is admissible under certain circumstances and that when admitted will serve as proof of the fact in dispute. ▮ Passing both of these features of the argument, we can find a complete solution of the point in the code section and the authorities construing same. (Code Civ. Proc., sec. 1951; *Pray* v. *Anthony,* 96 Cal. App. 772, 781 [274 Pac. 1024]; *Adams* v. *Hopkins,* 144 Cal. 19 [77 Pac. 712]; *Mercantile Trust Co.* v. *All Persons, etc.,* 183 Cal. 369 [191 Pac. 691].) The brief and argument of respondent on the point contains what purports to be evidence taken at the trial, but the bill of exceptions contains no such evidence. If the evidence thus presented were of any importance in determining the appeal, it should have been in the transcript or brought in by some appropriate proceeding. Also, the authorities cited by respondent on the question of the admissibility of the record construe the code section as it read prior to the amendment and have no bearing in applying the section as it now reads. No question is raised as to the ownership by appellants' grantor in the deed.

We may now consider the points of appellants. The title to the property was found to be in the defendant upon two grounds: First, that title thereto had been acquired by prescription and second, that defendant had acquired the title through a tax sale. We will first consider the question of prescription.

▮ The testimony brought before us in the transcript is quite meager. However, not one word of testimony discloses that the defendant K. G. Smith ever saw the property involved or ever made any claim thereto. The entire activity shown is that of one L. J. Smith, husband of the said K. G. Smith. Respondent contends this to be immaterial by reason of the law providing that all property acquired by either spouse during coverture, other than by bequest, devise or gift, is community property. It is difficult to follow this reasoning. It may be true, and no doubt is, that after title vests in the husband, the property would be community property, but it would seem to be stretching the idea of the community a trifle too far to contend that a community interest arose from the inception of the adverse claim, sufficient to make every act of the husband that of the wife in as far as the essentials of a prescription might be involved. ▮ The right of the wife in property conceded to be community

property is not a vested right. In the case of *Stewart* v. *Stewart*, which case was practically twice decided (199 Cal. 318 [249 Pac. 197]; 204 Cal. 546 [269 Pac. 439]), and referring to the last decision we find at page 553, after citing many authorities the court says: "These authorities hold uniformly and consistently that during the marriage the husband is the sole and exclusive owner of all the community property and the wife has no title thereto, nor interest or estate therein other than a mere expectancy as heir, if she survive him. A careful perusal of our former opinion will convince the most critical that we did not in anything that we said therein depart in the least degree from this long-established doctrine so clearly and emphatically enunciated and adhered to in the many prior decisions of this court, a large number of which were referred to and discussed in our former opinion." Incidentally, we here note that the prescription claimed is alleged to have been initiated in 1920 and this action was commenced in July of 1926. We mention this here to indicate that the laws applicable were of that period rather than attempt to discuss the effect of the more recent code amendments of later years.

In the present action there is not even an attempt to have the property decreed as community property but the claim of title, and the title as found, is exclusively in the wife. If the wife acquired this property through prescription, it must be because all of the essentials of a prescriptive title have been shown. As noted, the defendant wife offered no evidence at all concerning her activities in the matter. She made no claim of ownership, adverse or otherwise, during the period of alleged holding; she was never shown to have been in possession of the property. We cannot conceive how she acquired any title thereto prior to the time the husband acquired title, in the face of the law that she would acquire no title even after the husband had become vested with the title through the prescription. We may, however, pass this point entirely and assume for the purposes of discussion, that the holding of the husband and his actions could be accredited to the wife. The record fails to disclose the presence of all of the elements necessary to constitute a complete title through prescription.

[6] The testimony of L. J. Smith, the husband, shows as follows: In 1920 he owned the lot next to the lot in

dispute. He wanted to buy the lot in question to keep someone from building on it and so he went to the title company to ascertain the owner thereof, in order that he might purchase. Stopping here, it seems conclusive that at that time, which was in February or March, 1921, there was no assertion of any claim of ownership or right, but expressly an acknowledgment of no claim at all. Continuing with the testimony, he learned at that time that the property was going to be sold for taxes in July, and in July he went up and bought the tax title. This was on July 26, 1921. In the month of about April or May he had procured lumber to build a garage but did not build until after he had bought the lot at the tax sale. After he had bid in the property, but before deed, he went to some man who told him it was all right to build, and he did. He used the place off and on when down there and when he was not there he rented it two or three different times to people who wanted it. The man that lives next door used it but paid nothing. In addition to the foregoing there is evidence, undisputed, that he, Smith, fenced two sides of the lot, leaving unfenced the side next to his own property and also the side next to the sidewalk, presumably the street. From the foregoing it is apparent that there is a lack of proof showing exclusive possession on the part of Smith, inasmuch as such possession as is shown appears to have been joint with some neighbor, with no word of evidence disclosing the nature of the possession by the latter. Under the record this man next door could assert as strong a title as does Smith. Further, the purchase of the tax title, under the evidence, discloses not an intent to claim the property adversely and against the whole world, but rather an effort to secure the rights of the delinquent owner. The testimony that Smith used the lot whenever he was down there is far too indefinite to support a claim of hostile, exclusive and continuous possession. ██ There are no equities in favor of a party seeking by adverse holding to acquire the property of another. (*Glowner* v. *De Alvarez*, 10 Cal. App. 194 [101 Pac. 432].) Indeed, the very purpose of all organized government is to protect one in the enjoyment of his property, rather than by some sort of artifice to deprive him thereof. ██ Under the conditions shown, and the testimony referred to, the question of inclosure becomes more or less unimportant. In *Polack* v.

*McGrath,* 32 Cal. 15, at page 22, it is stated: ''The fences which constituted the only inclosure of the lots in controversy, admitting that they were erected and maintained as . . . stated, fall far short of a substantial inclosure. We are therefore of the opinion that the defendant's motion for a nonsuit should have been granted.'' Likewise here, it needs no argument to demonstrate that a fence surrounding two sides of a lot with the front of the lot open could, under no construction, legal or mechanical, constitute an inclosure.

It is conceded that the payment of taxes is one of the essential elements of acquiring title by adverse possession. The title cannot ripen in the adverse claimant without the payment of taxes. At the time of the filing of the action herein, the last half of the Los Angeles city taxes had not been paid and were delinquent. Subsequent to the filing of the action, the property was redeemed by the defendant. It would follow that when the suit was commenced the defendant had not paid all taxes and assessments levied upon the property during the five-year period. Without question, the filing of the suit was a break in the continuity and peace of the adverse holding, and the rights of the parties were to be determined as of the date of suit. It may be true that a different situation would be present if the tax had been levied and not yet due, as it is manifest that there can be no duty of payment until the same is due. However, the taxes delinquent had been long due prior to the commencement of the suit and unpaid. Authority need not be cited as to the necessity of the payment of taxes as an element of adverse holding. However, reference may be had to the following cases: *Glowner* v. *De Alvarez, supra; Cavanaugh* v. *Jackson,* 99 Cal. 672 [34 Pac. 509]; *O'Connor* v. *Fogle,* 63 Cal. 9. Allowing taxes to become delinquent and the property to be sold and then redeeming the property is not payment. In *McDonald* v. *McCoy,* 121 Cal. 55, at page 73 [53 Pac. 421, 427], we find authority to the effect that if payment of taxes ''is an element in the adverse possession tending to show good faith, certainly during'' the time ''in which the taxes have not been paid the possession lacks an essential element required in the statute'', and that ''during all the years in which the delinquency was allowed, the true owner might forbear suit because of his knowledge that the person in possession had not paid taxes, thereby indicating

362

that he was not holding adversely''. To the same effect is *Gallo* v. *Gallo*, 31 Cal. App. 189 [159 Pac. 1058]. Though the property here was not sold for taxes, but was redeemed before sale, the same reasoning would apply.

All in all, we conclude that the necessary elements going to create a title by prescription or adverse possession have not been shown. No personal right in the defendant appears, nor does any act on her part at all connect her with the property. The possession, or claimed possession of the husband, lacked continuity or hostility and the taxes were not paid. Indeed, on almost every phase of the case we have but a suggestion. As has been said in some of the earlier cases, among which may be cited *Curtis* v. *Le Grande Water Co.*, 20 Or. 34 [10 L. R. A. 484, 23 Pac. 808, 810, 25 Pac. 378], to acquire the right by prescription in the lands of another, the possession must be adverse, continuous, uninterrupted, and by the acquiescence of the owner. To effect that result the possession taken must be open, hostile and continuous—'' 'he must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest' ''.

 We come then to the claim of defendant based upon the tax deed. It is the contention of appellants that the tax deed was void and conveyed no title. It is unnecessary to recite the contentions of either party on this phase of the case. It is indisputable that the notice of delinquency is exactly the same as that before the District Court of Appeal and the Supreme Court in the following cases: *Bussenius* v. *Warden*, 71 Cal. App. 717 [236 Pac. 371]; *Snodgrass* v. *Errengy*, 86 Cal. App. 664 [261 Pac. 497]; *Gottstein* v. *Kelly*, 206 Cal. 742 [276 Pac. 347]. In each of the cited cases the sale was held void. Quoting from *Bussenius* v. *Warden, supra*, at page 722, we find: ''Section 3764 of the Political Code, . . . provided, among other things, that the delinquent list to be published by the tax collector 'must contain the names of the persons and a description of the property delinquent, and the amount of taxes, penalties, and costs due, opposite each name and description . . . ' The foregoing statement from the findings shows that said delinquent tax list failed to set forth the amount due for penalties; although the notice of the sale stated . . . that 'unless the

taxes delinquent, together with the costs and penalties, are paid, the real property upon which such taxes are a lien will be sold'. It thus appears that although the proposed sale was conditioned upon nonpayment of penalties, the delinquent list as published was defective in that it failed to state the amount of these penalties. Respondents contend, and apparently there is no answer thereto, that by reason of this defect the subsequent sale to the state was void, and that consequently the deed relied upon by appellant was likewise void.'' The Bussenius case was followed in each of the other cited cases. Without further detail the record here discloses exactly the same error and we therefore must hold that the tax deed here under discussion is void and confers no title in defendant.

For the reasons hereinbefore stated, the judgment is reversed.

Tyler, P. J., and Knight, J., concurred.