[No. B157490. Second Dist., Div. Six. Aug. 5, 2004.]

JERRY FELGENHAUER et al., Plaintiffs, Cross-defendants and Appellants, v.
JENNIFER SONI et al., Defendants, Cross-complainants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

**COUNSEL**

Christian E. Iversen for Plaintiffs, Cross-defendants and Appellants.

James L. Hudgens, Cappello & Noel, A. Barry Cappello, Pine & Pine and Norman Pine for Defendants, Cross-complainants and Appellants.

**OPINION**

**GILBERT, P. J.—** ██ Here we hold that to establish a claim of right to a prescriptive easement, the claimant need not believe he or she is legally entitled to use of the easement.

Jerry and Kim Felgenhauer brought this action to quiet title to prescriptive easements over neighboring property owned by Ken and Jennifer Soni. [[/]]*

A jury made special findings that established a prescriptive easement for deliveries. [[/]]*

We affirm.

## FACTS

In November of 1971, the Felgenhauers purchased a parcel of property consisting of the front portion of two contiguous lots on Spring Street in Paso Robles. The parcel is improved with a restaurant that faces Spring Street. The back portion of the lots is a parking lot that was owned by a bank. The parking lot is between a public alley and the back of the Felgenhauers' restaurant.

[[/]]*

---

*See footnote, *ante*, page 445.

From the time the Felgenhauers opened their restaurant in 1974, deliveries were made through the alley by crossing over the parking lot to the restaurant's back door. The Felgenhauers never asked permission of the bank to have deliveries made over its parking lot. The Felgenhauers operated the restaurant until the spring of 1978. Thereafter, until 1982, the Felgenhauers leased their property to various businesses.

The Felgenhauers reopened their restaurant in June of 1982. Deliveries resumed over the bank's parking lot to the restaurant's back door. In November of 1984, the Felgenhauers sold their restaurant business, but not the real property, to James and Ann Enloe. The Enloes leased the property from the Felgenhauers. Deliveries continued over the bank's parking lot.

James Enloe testified he did not believe he had the right to use the bank's property and never claimed the right. Enloe said that during his tenancy, he saw the bank manager in the parking lot. The manager told him the bank planned to construct a fence to define the boundary between the bank's property and the Felgenhauers' property. Enloe asked the manager to put in a gate so that he could continue to receive deliveries and have access to a trash dumpster. The manager agreed. Enloe "guess[ed]" the fence and gate were constructed about three years into his term. He said, "[Three years] could be right, but it's a guess." In argument to the jury, the Sonis' counsel said the fence and gate were constructed in January of 1988.

The Enloes sold the restaurant to Brett Butterfield in 1993. Butterfield sold it to William DaCossee in March of 1998. DaCossee was still operating the restaurant at the time of trial. During all this time, deliveries continued across the bank's parking lot.

The Sonis purchased the bank property, including the parking lot in dispute in 1998. In 1999, the Sonis told the Felgenhauers' tenant, DaCossee, that they were planning to cut off access to the restaurant from their parking lot.

The jury found the prescriptive period was from June of 1982 to January of 1988.

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 .

---

*See footnote, *ante*, page 445.

## DISCUSSION

### I

[[/]]<sup>*</sup>

The Sonis contend there is no substantial evidence to support a prescriptive easement for deliveries across their property. They claim the uncontroverted evidence is that the use of their property was not under "a claim of right."

█ Whether the elements of a prescriptive easement have been established is a question of fact, which we review under the substantial evidence rule. (See *O'Banion v. Borba* (1948) 32 Cal.2d 145, 149-150 [195 P.2d 10].) "In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. [Citation.] The trier of fact is not required to believe even uncontradicted testimony. [Citation.]" (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241 [71 Cal.Rptr.2d 399].)

█ At common law, a prescriptive easement was based on the fiction that a person who openly and continuously used the land of another without the owner's consent, had a lost grant. (See *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 575 [199 Cal.Rptr. 773, 676 P.2d 584].) California courts have rejected the fiction of the lost grant. Instead, the courts have adopted language from adverse possession in stating the elements of a prescriptive easement. The two are like twins, but not identical. (*Taormino v. Denny* (1970) 1 Cal.3d 679, 686 [83 Cal.Rptr. 359, 463 P.2d 711] [elements necessary to establish prescriptive easement are the same as those required to establish adverse possession, with exception of the payment of taxes].) Those elements are open and notorious use that is hostile and adverse, continuous and uninterrupted for the five-year statutory period under a claim of right. (*Ibid.*) Unfortunately, the language used to state the elements of a prescriptive easement or adverse possession invites misinterpretation. This is a case in point.

---

<sup>*</sup>See footnote, *ante*, page 445.

The Sonis argue the uncontroverted evidence is that the use of their property was not under a claim of right. They rely on the testimony of James Enloe that he never claimed he had a right to use the bank property for any purpose.

■ Claim of right does not require a belief or claim that the use is legally justified. (*Lord v. Sanchez* (1955) 136 Cal.App.2d 704, 707 [289 P.2d 41].) It simply means that the property was used without permission of the owner of the land. (*Ibid.*) As the American Law of Property states in the context of adverse possession: "In most of the cases asserting [the requirement of a claim of right], it means no more than that possession must be hostile, which in turn means only that the owner has not expressly consented to it by lease or license or has not been led into acquiescing in it by the denial of adverse claim on the part of the possessor." (3 Casner, American Law of Property (1952) Title by Adverse Possession, § 5.4, p. 776.) One text proposes that because the phrase " 'claim of right' " has caused so much trouble by suggesting the need for an intent or state of mind, it would be better if the phrase and the notions it has spawned were forgotten. (Cunningham et al., The Law of Property (Law. ed. 1984) Adverse Possession, § 11.7, p. 762.) Enloe testified that he had no discussion with the bank about deliveries being made over its property. The jury could reasonably conclude the Enloes used the bank's property without its permission. Thus they used it under a claim of right.

The Sonis attempt to make much of the fence the bank constructed between the properties and Enloe's request to put in a gate. But Enloe was uncertain when the fence and gate were constructed. The Sonis' attorney argued it was constructed in January of 1988. The jury could reasonably conclude that by then the prescriptive easement had been established.

The Sonis argue the gate shows the use of their property was not hostile. They cite *Myran v. Smith* (1931) 117 Cal.App. 355, 362 [4 P.2d 219], for the proposition that to effect a prescriptive easement the adverse user " ' ". . . must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." ' "

■ But *Myran* made the statement in the context of what is necessary to create a prescriptive easement. Here, as we have said, the jury could reasonably conclude the prescriptive easement was established prior to the erection of the

fence and gate. The Sonis cite no authority for the proposition that even after the easement is created, the user must keep the flag of hostility flying. To the contrary, once the easement is created, the use continues as a matter of legal right, and it is irrelevant whether the owner of the servient estate purports to grant permission for its continuance.

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. The parties are to bear their own costs.

Yegan, J., and Coffee, J., concurred.

---

*See footnote, *ante*, page 445.