Filed 1/28/26  Gutierrez v. Singh CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PETRA B. GUTIERREZ, as Trustee, etc., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BALBIR SINGH, et al., <br><br> Defendants and Appellants. | F087808 <br><br> (Super. Ct. No. BCV-19-102408) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  T. Mark Smith, Judge.

LeBeau — Thelen and Andrew K. Sheffield for Defendants and Appellants.

Miller Starr Regalia and Matthew C. Henderson for Plaintiffs and Respondents.

-ooOoo-

This case concerns an easement by prescription between two adjoining landowners at a commercial truck stop along Interstate 5.  A complication arises because the parties entered into a landlord-tenant relationship concerning the adjoined land.

Petra Gutierrez[1] owns and operates a truck-service business on her land. The Gutierrez property is bordered immediately to the south by Balbir Singh's[2] property. Along the western edge of each property is a public road—running north and south—named Aloma Street. The northern edge of the Singh property is a private road—running east and west—adjacent to the Gutierrez southern border. The private road is known as Lawton Drive. An aerial view of the land with interlineations to set the stage:[3]



Gutierrez permissively used Lawton Drive for many years to operate her business, driving on it to access the land from the south, even building a large truck-servicing garage facing and opening onto Lawton Drive. Customers, too, regularly drove down

---

[1] Collectively, Petra B. Gutierrez, Trustee of the Samuel and Petra Gutierrez Family Trust, and Gutierrez Tire, Inc. We refer to plaintiffs and respondents as "Gutierrez."

[2] Collectively, Balbir Singh and Lost Hills Investors, LLC.

[3] Trial Exhibit 78, depicting the area in early 2013, cropped for convenience.

Aloma Street, turned onto Lawton Drive, and then accessed the Gutierrez business at the large garage.

Permission for Gutierrez to use Lawton Drive was eventually revoked but its usage never ceased. A few years after revocation, Gutierrez leased one acre of Singh's property, directly to the south of her business. The leased land was used to park customers' trucks; Lawton Drive was used to access the leased land.

After the lease ended, Gutierrez and her customers and employees continued to use Lawton Drive to reach the business until one day Singh blocked the entrance on Lawton Drive, i.e., the primary route used to operate the Gutierrez business. Gutierrez then filed this lawsuit seeking "to quiet title to a prescriptive easement[.]"

The parties tried the case to judgment in a court trial. The trial court entered judgment in Gutierrez's favor, finding she established an easement by prescription to use Lawton Drive—the private road on the Singh property—to access her property and run her business.

On appeal, Singh essentially contends Gutierrez failed to quiet title due to the intervening landlord-tenant relationship between the parties. As explained below, we affirm.

## BACKGROUND

*Factual History*

Gutierrez purchased land in 2004 and developed it to operate a truck-service business. The land is to the north of Singh's property. The western border is Aloma Street, a public road running north and south.

On the northern edge of Singh's property, abutting the southern edge of the Gutierrez property, is Lawton Drive, a private road running east-west and sitting entirely on the Singh property. Lawton Drive was formerly a public road; Kern County vacated the road in 1990.

3.

Until 2012, Gutierrez utilized Lawton Drive with permission to access her property from its southern edge. It was also accessible from the western edge off Aloma Street, but customers and the Gutierrez family[4] generally used Lawton Drive to reach the property and business. Indeed, a servicing garage, depicted below, was built on the southern edge opening onto Lawton Drive.[5]



Although permission to use Lawton Drive was revoked in 2012, Gutierrez and her customers and employees never stopped using it. In 2015, Gutierrez and Singh entered

---

[4] Gutierrez's son, Gabriel, worked at the business and testified at trial.

[5] The photographic trial exhibit, Exhibit 121-2, also depicts the fence Singh installed to obstruct the Gutierrez property. The large yellow structure is the truck-servicing garage, generally inoperable due to the fence.

The photograph is taken from Aloma Street, essentially where it intersects with Lawton Drive. The primary visible road is Lawton Drive. The Gutierrez property is to the left and the fence on that side is essentially the line between the Singh and Gutierrez parcels involved in this case.

into an agreement to lease one acre of Singh's property south of the Gutierrez property to use as a parking lot for the Gutierrez business. Notably, Singh's property to the south was larger than one acre but the lease did not describe which exact acre was subject to the agreement. Gutierrez testified she believed she was renting an acre south of Lawton Drive, but not including Lawton Drive itself.

The agreement included the "right" to access the leased acre, either through Lawton Drive to the north or Aloma Street to the west. Customers would often drive across Lawton Drive from the Singh property, i.e., leased parking lot, onto the Gutierrez property.

The lease ended and Gutierrez continued using Lawton Drive to operate her business. When the parties failed to negotiate a new lease, Singh erected a fence—later a concrete barrier—blocking access to the Gutierrez property from Lawton Drive. Gutierrez reorganized the business towards Aloma Street and subsequently initiated this lawsuit.

*Lawsuit*

Gutierrez filed a complaint seeking "to quiet title to a prescriptive easement[.]"[6] The complaint alleged she "own[ed] an easement … that burdens the Singh property" "for ingress, egress[,] and road purposes to and from the Gutierrez property," "including" "customers, employees, vendors, tenants[,] and other visitors … in connection with the business[.]"

"[T]itle" to the easement was "based on the actual, open, notorious, hostile, and adverse use" of Lawton Drive "for no less than five years preceding the commencement of th[e] action." More specifically, vehicles crossed "the easement to enter and exit the

---

[6] The complaint alleged other causes of action not material to this appeal.

5.

south side of [the] Gutierrez property … on a daily basis." The complaint illustrated the easement as follows:[7]



Singh answered the complaint, affirmatively claiming Gutierrez was "barred" from quieting title to an easement "by virtue of the fact [Gutierrez] [was a] tenant[] of" Singh. In other words, Singh alleged the Gutierrez-business usage of Lawton Drive was with "consent and permission[.]"

*Court's Ruling*

The trial court made the following pertinent factual findings and legal conclusions. Gutierrez used Lawton Drive—which rested "entirely on the Singh property"— to access her property and operate her business. Previously, Lawton Drive was a public road; Kern

---

**[7]** "PARCEL 1 P.M. 3368" is the Gutierrez property and "PARCEL 1 P.M. 12090" is the Singh property.

County vacated[8] the road in 1990—prior to the most relevant events involved in this case.

Gutierrez's use of Lawton Drive was with permission until 2012. The parties, in 2015, entered into a lease agreement where Gutierrez "rented a one-acre portion of the Singh [p]roperty located *south* of," but not including, "Lawton Drive[.]" (Emphasis added.) The agreement's purpose was to utilize the leased land as a parking lot.

Notwithstanding the finding the 2015 lease did not include Lawton Drive, the trial court acknowledged the Gutierrez witnesses[9] "testified that the use of Lawton Drive to provide access for trucks to park on the Singh [p]roperty was … part of the rights conveyed" under the lease. Importantly, however, the Gutierrez witnesses steadfastly testified they always believed Lawton Drive was a public road not requiring permission.

Ultimately, the trial court differentiated between usage of Lawton Drive 1) under the lease in a *north-and-south* direction, i.e., "permissive" travel "over Lawton Drive" to and from the Singh-land-turned-parking-lot, and 2) "entry directly into the Gutierrez [p]roperty from Lawton Drive," i.e., entry to the Gutierrez land and business from Lawton Drive in a *west-to-east* direction from Aloma Street. The latter usage was found to establish a prescriptive easement because Singh did not carry the "burden to demonstrate" that *that* usage "was permissive" under the lease. The entered judgment was consistent with the easement shown above.

## DISCUSSION

We discern three primary questions necessary to resolve this appeal. First, is Lawton Drive still a public road? Second, did Gutierrez admit in discovery the usage of Lawton Drive was consensual, defeating adversity, a necessary prerequisite to

---

[8] See, generally, Streets and Highways Code section 8300 et seq.

[9] Petra and Gabriel.

7.

establishing a prescriptive easement?  Third, did the trial court properly find Gutierrez proved an easement by prescription?

We answer: 1) Lawton Drive was properly and fully vacated returning it to its private status; 2) Gutierrez did not admit Lawton Drive was used with consent in the manner at issue on trial and appeal; and 3) the trial court correctly found a prescriptive easement in Gutierrez's favor.  Accordingly, we will affirm the judgment.

## I.  Vacated Public Road; Lawton Drive

Gutierrez contends we may affirm the judgment simply by finding either she is the beneficiary of an express easement in Lawton Drive, or Lawton Drive is a public road. Singh argues Gutierrez failed to cross appeal and the issue is not reachable on appeal. We will assume the issue is properly within the scope of the appeal because we conclude the trial court properly found in Singh's favor on these issues.

### A.  Additional Background

Prior to the events in this case, all the way back in 1976, the parcels involved here were owned by a common entity.  That owner granted an easement over Lawton Drive to "adjacent owners" and  "the public in general[.]"[10]  At the same time, it granted an "irrevocable offer of dedication of an easement for road purposes" "to the County of Kern [(County)][.]"  The County accepted the offer and recorded the same.  (See Gov. Code, § 7050.)

In 1990, however, the County vacated the dedication pursuant to the Streets and Highways Code.  The resolution vacating the dedication noted the County "Department of Planning and Development Services" recommended conditioning vacation "upon completion of drive approach improvements at the [projected] former intersection[.]"

The County's ultimate resolution found vacating the easement would "not landlock any lot or parcel," "the public-right-of way [was] unnecessary for present or

---

[10] The granted easement was doubled in size by a second grant in 1984.

8.

prospective public use," and approved "vacation subject to the conditions as recommended by the Department" of Planning and Development Services. Finally, the resolution stated "vacation [was] complete" "[u]pon … recordation[.]" The resolution was recorded a few days later.

The trial court ruled the County validly vacated the dedicated easement which "had the effect of vacating all of the dedications in favor of the public" over Lawton Drive. While acknowledging the Gutierrez position that vacation was ineffective because the resolution's noted improvements were never made, the court found the fact the resolution was swiftly recorded meant the County "did not consider" the improvements "a condition precedent to … vacation of the public easements." (See Sts. & Hy. Code,[11] § 8324, subd. (b) ["The resolution of vacation may provide that the vacation occurs only after conditions required by the legislative body have been satisfied and may instruct the clerk that the resolution of vacation not be recorded until the conditions have been satisfied."] & § 8325, subd. (b) [vacation complete upon recordation].)

Last, as relevant here, the trial court held the County's "vacation of the public easements extinguished … private easements and abutter rights as well." The court cited to section 8353 which states, in part, "the vacation of a street or highway extinguishes all private easements therein claimed by reason of the purchase of a lot[.]"

**B. Analysis**

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) Where " 'the trial court resolved disputed factual issues, the reviewing court

---

[11] Subsequent statutory references are to the Streets and Highways Code unless stated otherwise.

[does] not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.' " (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848.)

Here, the trial court found the fact the resolution vacating the public easement over Lawton Drive meant the resolution did not contain a condition precedent to vacation. The finding is supported by substantial evidence because there was no directive to withhold recordation until a condition was satisfied, and because the resolution was actually recorded. (See § 8324, subd. (b) ["resolution … may instruct the clerk that the resolution of vacation not be recorded until the conditions have been satisfied."].)

The remaining legal conclusions were correct. The trial court correctly noted vacating an easement "extinguishes all private easements therein[.]"[12] (§ 8353, subd. (a).) Finally, " '[v]acation' means the complete or partial abandonment or termination of the public right to use a street, highway, or public service easement." (§ 8309.) " 'Street' and 'highway' include all or part of, or any right in, a state highway or other public highway, road, street, avenue, alley, lane, driveway, place, court, trail, or other public right-of-way or easement, or purported public street or highway, and rights connected therewith, including, but not limited to, restrictions of access or abutters' rights, sloping easements, or other incidents to a street or highway." (§ 8308.) Combined, the court properly held vacating a street, highway, or easement includes any abutters' rights.[13]

---

[12] The Streets and Highways Code provides exceptions to the general rule private easements are extinguished, but those exceptions are not relevant in this case.

[13] Abutters' rights are "in the nature of easements and 'deduced by way of consequence from the purposes of a public street' [citation], includ[ing] the right of access to and from the road, and the right to receive light and air from the adjoining street." (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 517.) The resolution in this matter found the public easement was unnecessary and the future-Gutierrez parcel was not landlocked by vacation.

## II. Admissions

Singh sought to introduce into evidence several admissions by Gutierrez obtained during the discovery process. The trial court accepted most admissions but limited the scope based on its interpretation of the admissions. Singh now contends "the trial court failed to properly consider and give preclusive effect to the … admissions[.]" We disagree.

### A. Additional Background

Only the following alleged admissions are in issue. One, Gutierrez used the Singh property with Singh's consent. Two, legal title to the easement never transferred to Gutierrez. Three, Singh holds legal title to his land. Four, Singh consented to the easement's use. Five, Singh permitted Gutierrez to use his land.

The trial court ruled on the alleged admissions in the following manner. The court found ambiguity in Gutierrez's admissions and limited "the legal effect of those admissions consistent with" Gutierrez's written objections. Those written objections explained admissions regarding title referred to title to a " 'fee estate,' " not "a right of ingress, egress, and road purposes[.]"[14] The admissions to consent were qualified by anchoring consensual use as permitted for the lease's purpose.[15] Finally, an admission to using the easement with consent meant—pursuant to the understood discovery request and its defined terms—using *real property* rather than a *right of ingress and egress*.[16]

---

[14] The admissions did in fact qualify each response referred to a fee estate, not an easement.

[15] These admissions, too, contained a qualifier limiting consent to consensual use consistent with the lease agreement, as opposed to an admission to consensual use of the claimed easement at issue.

[16] For clarity, the explanation to this admission claimed the discovery request defined "the term 'easement' not as a right of ingress egress, and road purposes, but instead, as the real property itself."

## B. Analysis

"Code of Civil Procedure section 2033.010 et seq. authorizes parties to propound requests for admissions. A matter admitted in a response to a request for admissions [(RFA)] is 'conclusively established against the party making the admission ... unless the court has permitted withdrawal or amendment of that admission. …' [Citations.] Trial courts have the discretion to consider parol evidence that explains an admission. [Citation.] However, while courts may utilize evidence to elucidate and explain an admission, they cannot use such evidence to contradict the plain meaning of a response to a request for admissions. [Citation.] If a response to a request for admission is unambiguous, and is not subject to different meanings, the matter admitted is conclusively established." (*Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 259-260.)

A trial court's rulings on RFAs "are generally reviewed for abuse of discretion." (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 772 (*St. Mary*).) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.] But the court's discretion is not unlimited, especially when, as here, its exercise implicates a party's ability to present its case. Rather, it must be exercised within the confines of the applicable legal principles." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).)

The trial court's rulings on the admissions in this case are not beyond reason. We group the relevant admissions into two groups and address each in turn: title and consent.

First, the title admissions are readily resolved. There is no doubt Gutierrez admitted Singh held title to a *fee estate* in his land; the title admissions did not relate to an easement. While the RFA certainly sought an admission regarding title to an easement, the Gutierrez response simply did not answer the question because it instead answered a question about a fee estate. (Cf. *Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1601

12.

[" 'the successful claimant of a prescriptive easement gains not title, but the right to make a specific use of someone else's property.' "].)

"If the propounding party believes that the responses to RFAs are deficient in some respect or that any objections thereto are not well taken, he or she may make a motion to compel further responses under [Code of Civil Procedure,] section 2033.290." (*St. Mary, supra,* 223 Cal.App.4th at p. 776.) Singh did not seek a more direct answer and cannot now attempt to twist what *was* admitted into something that was *not* admitted.

As to consensual use, Gutierrez only admitted consensual use of Singh's land consistent with the lease agreement. It is true, in reply to an interrogatory, Gutierrez stated Singh "consented to … use of the easement for purposes relating to the [r]ental [a]greement." Gutierrez later explained the response prior to the trial court's ruling on the admission, as noted above, indicating it understood Singh's defined-term easement meant the real property itself, not "a right of ingress, egress, and road purposes[.]"

The trial court properly considered the further explanation, found the response ambiguous, and adopted the interpretation advanced by Gutierrez. We do not believe the court abused its discretion by considering *first* parol evidence and *then* finding the response ambiguous.[17] All told, the court properly applied each admission to the case and no admission or combination of admissions outright defeated the Gutierrez claim to a prescriptive easement. (See *Sargon, supra,* 55 Cal.4th at p. 773 [particular discretion "when" a ruling "implicates a party's ability to present its case"].)

## III. Prescriptive Easement

" 'Interests in land can take several forms, including "estates" and "easements." ' [Citation.] 'An estate is an ownership interest in land that is, or may become, possessory.' [Citation.] 'An easement,' by contrast, 'gives a nonpossessory and

---

[17] Indeed, Gutierrez's written, further explanation is readily construed as, or at least akin to, a motion to amend or withdraw an admission. (See Code Civ. Proc., § 2033.410.)

13.

restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership.' " (*Romero v. Shih* (2024) 15 Cal.5th 680, 692 (*Romero*).) Prescriptive "easements [are] acquired through the open, continuous, and hostile use of another's land." (*Id.* at p. 691.)

"A prescriptive easement is established where the claimant proves 'use of the property, for the statutory period of five years, which use has been (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right.' [Citation.] Such an easement provides not *title*, but the right to make a specific *use* of someone else's property." (*Wang v. Peletta* (2025) 112 Cal.App.5th 478, 486; *Romero, supra,* 15 Cal.5th at p. 691.)

"The term 'adverse use' 'means only that the owner has not expressly consented to [the use] by lease or license[.]' [Citation.] Whether the elements of prescriptive use have been established is ordinarily a question of fact, reviewed under the substantial evidence standard." (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1249-1250; *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570.)

Interpreting the record consistent with the judgment, the record contains substantial evidence of each element. (See *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*) ["The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment."].) It is beyond reasonable dispute Gutierrez used Singh's property, i.e., Lawton Drive, in an open, notorious, continuous, and uninterrupted manner for at least five years. The Gutierrez business operated via Lawton Drive on "a daily basis" for well over five years, so much so that Singh eventually blocked the route.

A complication in this case, as mentioned, occurs because the parties entered into a lease agreement contemplating *some* usage of Lawton Drive. The trial court found the agreement included permission to use Lawton Drive in a north-and-south direction to

14.

travel to and from Singh's property directly onto the Gutierrez property and its truck-servicing business.

The trial court also crucially found the lease agreement *did not include* the right to use Lawton Drive in a west-to-east manner from Aloma Street. This use, comprising the primary usage of the road and the prevailing flow of the Gutierrez business for many years, including owners,[18] employees, and customers, constituted the alleged prescriptive easement. Because this use was not permissive under the agreement, the court found the requisite hostile use for a five-year period. The factual finding on consent is supported by substantial evidence in the record.

First, the lease agreement described neither the property subject to the lease nor any usage of Lawton Drive. The trial court explicitly found the leased area did not include Lawton Drive,[19] and found the agreement implied a right to travel directly across a strip of Lawton Drive in a north-and-south direction so that vehicles could freely travel between the Gutierrez business and the leased parking area. These are factual conclusions clearly within the trial court's discretion and are bolstered by the fact each property in issue was also accessible from its western edge via Aloma Street—Lawton Drive was unnecessary to access either property including the leased parking area.

The trial court cogently distinguished the north-and-south usage of Lawton Drive from its the west-to-east usage. The west-to-east usage was the alleged prescriptive easement. Although some use of Lawton Drive was permitted under the lease, the west-

---

[18] Gutierrez owned the land and business with her husband who passed away in 2014.

[19] The lease agreement defined the subject area as "1 Acre of land[.]" It did not state *which* acre was rented but did refer to an "attached location map with highlighted area of rental property." The Gutierrez witnesses testified they never saw the map. Singh never produced the map at trial despite professing its existence. Accordingly, the trial court appropriately and properly exercised its discretion in deciding which acre was leased under the agreement.

to-east use on trial was hostile, without consent, and under claim of right. (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450 [claim of right "simply means that the property was used without permission of the owner of the land."].)

Second, the Gutierrez witnesses steadfastly testified they believed Lawton Drive was a public road.[20] In other words, Gutierrez had no reason to rent its use, which supports the conclusion she did not rent its use.

In sum, the trial court's factual findings the lease agreement did not include travel on Lawton Drive from Aloma Street to the west is supported by substantial evidence in the record. That usage, without Singh's consent, open and notorious, continuous and hostile, under a claim of right over a five-year period, ripened into a prescriptive easement prior to Singh blocking access to the Gutierrez property.

Because the trial court explicitly found the easement area and use at issue was not permissive under the lease, Singh cannot avail himself of various landlord-tenant protections. Primarily, he cites Civil Code of Procedure section 326 which provides "the possession of the tenant is deemed the possession of the landlord until the expiration of five years from the termination of the tenancy … or last payment of rent[.]" He also cites Evidence Code section 624 which states "[a] tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation." Again, the protections do not apply because the land and usage purportedly transformed into a prescriptive easement was not covered by the landlord-tenant relationship.

Finally, Singh relies heavily on *San Juan Gold Co. v. San Juan Ridge Mut. Water Ass'n* (1939) 34 Cal.App.2d 159 (*San Juan*). There, the parties entered into a "lease" to

---

[20] The fact Gutierrez believed Lawton Drive was a public road does not defeat hostility. " '[T]he requisite hostile possession and claim of right may be established when the occupancy or use occurred through mistake.' " (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 940, quoting *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 322.)

"use [certain] facilities for domestic and irrigation purposes," but without the right "to use [those facilities] for mining purposes[.]" (*Id.* at p. 163.)

The reviewing court in *San Juan* noted that because the tenants "went into possession under the terms of the lease, their use of the premises, even for mining purposes, was presumed to be at least by acquiescence of the owner and its mere knowledge, if any, of the use for mining purposes raised no presumption of a hostile or other claim of right. Occupancy is presumed to be under the lease until some unequivocal act gives notice of a changed attitude, and these are questions of fact for the trial court." (*San Juan, supra,* 34 Cal.App.3d at pp. 170-171) The court added "[t]here was no evidence that the [tenants] had done anything to communicate their claim of right to the owners …, but they rely upon the fact that certain of their acts must be held, as a matter of law, to have put the owners on notice as to the hostile nature of the use for mining purposes. These acts consisted of improvements made by [tenants] on the water system and the use of said water for mining purposes. It [was] observed that the lease provided for the making of such improvements and it [was] obvious that acts performed by permission under the lease could not be considered hostile." (*Id.* at p. 171.)

By contrast, the trial court in this case resolved critical facts against Singh. In particular, the court found the lease agreement did not confer a right to travel across Lawton Drive in a west-to-east manner to reach the Gutierrez property on its southern border. That exact usage, which continued for approximately seven years unabated until a fence was installed, ripened into a prescriptive easement because it was without consent under the lease or in any other manner.

In conclusion, the agreement did concern some consensual usage of Lawton Drive—north-and-south travel to and from the servicing garage to leased parking area— but that usage was factually and legally distinct. Because the court's findings are supported by substantial evidence in the record, we accept them on appeal. (See *Jameson, supra,* 5 Cal.5th at pp. 608-609; *Fladeboe, supra,* 150 Cal.App.4th at p. 58.)

## **DISPOSITION**

The judgment is affirmed.  Costs on appeal are awarded to Gutierrez.


                                                             SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P. J.


DESANTOS, J.

18.