Filed 4/9/26  Miranda v. Aguilar CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| OSCAR MIRANDA, | B343260 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 18STCV06644) |
| v. | |
| LUIS AGUILAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Neal-Lopez Law Group and Tracy Neal-Lopez for Defendant and Appellant.

BeatriceT Law and Elizabeth Opuni Afriyie for Plaintiff and Respondent.

# INTRODUCTION

A jury found Oscar Miranda had a prescriptive easement to use his neighbor Luis Aguilar's brick path and gate to move his trash and recycling bins to the street. Aguilar appeals from the judgment, arguing substantial evidence did not support the jury's finding by clear and convincing evidence Miranda's use of Aguilar's path and gate created a prescriptive easement. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Miranda Uses Aguilar's Path and Gate To Move His Trash and Recycling Bins*

Aguilar has lived in a three-unit building since 1975. After Aguilar's mother died in 1999, he became the owner of the property. In 2009 Miranda purchased the property next to Aguilar's. The two properties share an express reciprocal easement extending two feet along either side of the property line. Previous owners recorded the easement in 1950 for a shared walkway, but the walkway was never built. A brick path runs along the side of Aguilar's property (next to the express easement) to a small pedestrian gate at the street. The brick path and pedestrian gate are entirely on Aguilar's property.

Miranda stored his trash and recycling bins on the side of his house next to Aguilar's brick path. Though Miranda had a driveway in front of his house, he did not store his bins there because they got "in the way of using the driveway" for parking. Beginning in 2012 Miranda began wheeling the trash and recycling bins along the brick path and through Aguilar's

2

pedestrian gate to the curb.  In 2012 Miranda placed a chain and lock on Aguilar's gate because the latch did not stay closed and there was a squatter across the street.  Before Miranda locked the gate, he offered to give Aguilar a key.

In February 2014 Miranda wrote Aguilar to "follow up" on their conversation the previous year "regarding [Aguilar's] plans to build a fence."  Miranda asked whether Aguilar was starting construction and asked him to provide the "land survey" he had mentioned to "assist us in determining my access to the sidewalk via my [express] easement on your property."  Miranda stated that he did not "want to get into any type of feud" with Aguilar and that he "would really appreciate settling it amicably."  Miranda said Aguilar "should already know that access to the sidewalk is really only used for taking out the trash or in case of an emergency and regardless, an easement is an easement."

In March 2015 Miranda responded to a letter from Aguilar's attorney.  Miranda stated that Aguilar's tenants had harassed Miranda and that Aguilar had not responded to Miranda's requests to control his tenants.  Miranda also stated that his easement allowed him to use the brick path on Aguilar's property and that, contrary to the attorney's assertion, Miranda did not change the locks on the gate without permission; he placed a lock on the gate in 2012 "while having discussions with . . . Aguilar's property manager," who "thanked [Miranda] for placing a lock on this gate."  Miranda said he would provide Aguilar with a key to the lock, but Miranda asked Aguilar not to share the key with his tenants because they had been "aggressive" and "violent."

In April 2018 Aguilar put a chain and lock on the gate, preventing Miranda from opening the gate.  Aguilar also put up a

"no trespassing" sign. With the gate locked, Miranda had to lift the bins over the locked gate or onto his driveway, which was higher than the brick path. Miranda cut down some shrubbery on Aguilar's property near the locked gate to clear a path to Miranda's driveway. On April 2, 2018 Miranda sent Aguilar a text message: "Please unlock gate. You and I need to talk about my legal easement." Aguilar did not respond to the text or unlock the gate.

In late 2023 Aguilar built a chain link fence on his side of the property line, blocking Miranda's access to the brick path and the gate. To move the trash and recycling bins from the side of Miranda's house to the curb, Miranda had to lift the bins up onto the back of his driveway, which was harder than lifting the bins at the front of the driveway, where the terrain was more even. Later Miranda stopped storing the trash and recycling bins on the side of his house and instead put them in his driveway.

B.     *Miranda Files This Action Against Aguilar, and the Jury Finds Miranda Has a Prescriptive Easement*

In 2018 Miranda filed this action against Aguilar, and the court conducted a jury trial on Miranda's causes of action for prescriptive easement and trespass and on Aguilar's cross-complaint for trespass.[1] After Miranda presented his case, the

---

[1]     Because "an action to determine the existence of an easement by prescription . . . is an action at law and not equity" (*Connolly v. Trabue* (2012) 204 Cal.App.4th 1154, 1164), Miranda had a right to a jury trial on his cause of action for a prescriptive easement. (See *Arciero Ranches v. Meza* (1993) 17 Cal.App.4th 114, 126; *Frahm v. Briggs* (1970) 12 Cal.App.3d 441, 445.)

4

trial court granted Aguilar's motion for nonsuit on Miranda's trespass cause of action.

The jury returned a special verdict in favor of Miranda on his prescriptive easement cause of action. The jury found Miranda proved by clear and convincing evidence (1) he had been using Aguilar's "brick pathway and entry gate at the end of the path for the purpose of taking his trash bins to and from the side of his residence to the street"; (2) Miranda's use of the pathway and gate "was continuous and uninterrupted"; (3) Miranda's use of the pathway and gate "was open and easily observable, or was under circumstances that would give reasonable notice to" Aguilar; (4) Miranda did not have Aguilar's permission to use his land; and (5) Aguilar had to modify or alter the fence he installed in 2023 to allow Miranda access to the prescriptive easement.

Aguilar filed motions for judgment notwithstanding the verdict and for a new trial, arguing substantial evidence did not support the verdict. The trial court denied the motions, ruling "substantial evidence and reasonable inference support the verdict." Aguilar timely appealed from the judgment.

## DISCUSSION

A. *Applicable Law on Prescriptive Easements*

An easement is "'a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership.'" (*Romero v. Shih* (2024) 15 Cal.5th 680, 692.) An easement "is merely the right to use the land of another for a specific purpose—most often, the right to cross the land of another." (*Silacci v. Abramson* (1996) 45 Cal.App.4th 558, 564; see *Hansen v. Sandridge Partners, L.P.*

5

(2018) 22 Cal.App.5th 1020, 1032 [a "right-of-way over another's land" is an easement].)

An easement may be created in several ways, including "by prescription, through the continuous, hostile, and adverse use of the property." (*Romero v. Shih*, *supra*, 15 Cal.5th at p. 692.) "A prescriptive easement may be acquired by open, notorious, continuous, adverse use, under claim of right, for a period of five years." (*Montecito Country Club, LLC v. Root* (2026) 118 Cal.App.5th 1236, 1243; see *Batta v. Hunt* (2024) 106 Cal.App.5th 295, 305; *Hansen v. Sandridge Partners, L.P.*, *supra*, 22 Cal.App.5th at p. 1032.) "The elements necessary to establish a prescriptive easement 'are designed to [ensure] that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement." (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 938-939; see *McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1181 ["'a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so'"].)

The party seeking a prescriptive easement must prove its elements by clear and convincing evidence. (*Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 726; *Grant v. Ratliff* (2008) 164 Cal.App.4th 1304, 1310.)[2] ""Clear and convincing"

---

[2] Some courts have stated a prescriptive easement may be established by a preponderance of the evidence. (See *Montecito Country Club, LLC v. Root*, *supra*, 118 Cal.App.5th at p. 1243; *Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057, 1074.) Because substantial evidence supported the jury's

evidence requires a finding of high probability.  The evidence must be so clear as to leave no substantial doubt.  It must be sufficiently strong to command the unhesitating assent of every reasonable mind.'"  (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

B.  *Substantial Evidence Supported the Jury's Verdict*

1.  *Standard of Review*

"Whether the elements of a prescriptive easement have been established is a question of fact, which we review under the substantial evidence rule."  (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 449; see *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 ["Whether the elements of prescription are established is a question of fact for the trial court [citation], and the findings of the court will not be disturbed where there is substantial evidence to support them."].)  "When a party contends insufficient evidence supports a jury verdict, '[o]ur review "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination."'  [Citations.]  "'We must 'view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor.'"'"  (*Carranza v. City of Los Angeles* (2025) 111 Cal.App.5th 388, 399-400, italics omitted.)  "'Reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury verdict.'"  (*Casey N. v. County of Orange* (2022)

---

findings by clear and convincing evidence, we need not address whether a lesser burden of proof is sufficient.

86 Cal.App.5th 1158, 1170-1171.)  We review a finding a party has proved a fact by clear and convincing evidence by determining "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

<blockquote>

2.      *Substantial Evidence Supported the Jury's Findings By Clear and Convincing Evidence*

</blockquote>

Substantial evidence supported the jury's finding by clear and convincing evidence Miranda acquired a prescriptive easement to use the path and gate before Aguilar locked the gate and posted the "no trespassing" sign in 2018.

<blockquote>

a.      *Miranda's Use Was Open, Notorious, and Continuous for Five Years*

</blockquote>

Substantial evidence supported the jury's finding by clear and convincing evidence Miranda's use was open, notorious, and continuous for at least five years.  Miranda testified he began using the path and gate to move his trash and recycling bins to and from the curb in 2012.  He also testified he put a chain and a lock on the gate in 2012, which his March 2015 letter to Aguilar's attorney corroborated.  Thus, by the time Aguilar locked the gate in April 2018, Miranda had been using the path and gate continuously for at least five years.  Aguilar could not extinguish Miranda's prescriptive easement by blocking his access or posting a sign.  (See *Felgenhauer v. Soni*, *supra*, 121 Cal.App.4th at p. 451 ["once the easement is created, the use continues as a matter of legal right, and it is irrelevant whether the owner of the servient estate purports to grant permission for its

continuance"]; *Harrison v. Bouris* (1956) 139 Cal.App.2d 170, 175 ["an easement by prescription, once acquired," is not lost by the owner "subsequently posting a sign to the effect that the property is private property"].)

Because the path and gate were on Aguilar's property, only steps from where he and his tenants lived, Miranda's use of the path and gate was open and notorious. The jury could reasonably infer Aguilar could see and hear Miranda wheeling the bins over the brick path and through the gate; indeed, at trial Aguilar introduced photographs, including screenshots of his security camera footage, of Miranda using the path. And Aguilar admitted he was aware Miranda was using the path and gate since at least 2014.

Aguilar argues "Miranda admitted under oath that he had no evidence of continuous use for the requisite period: 'I do not have evidence of that.'" Miranda's testimony (which Aguilar quotes five times in his opening brief) was not the concession Aguilar claims it is. Counsel for Aguilar asked Miranda: "Is there any evidence *other than your testimony that you presented today* that shows that you've been using the brick path and small gate since 2012?" Miranda responded: "I do not have evidence of that." Miranda, however, had already testified and introduced documents showing he used the brick path and gate continuously from 2012 to 2018.

Aguilar also argues Miranda "produced no witnesses, documents, or photographs showing consistent use for any five-year period." But he did. As discussed, Miranda testified he used the path and gate consistently from 2012 to 2018, Miranda's 2014 letter stated he used the path for taking out the trash, and his 2015 letter said he had placed a lock on the gate in 2012.

9

Next, Aguilar argues his "testimony that the gate remained chained, locked, and posted 'No Trespassing' was unrefuted." Except that it was refuted. Aguilar testified that a real estate agent locked the gate in 1975 when Aguilar's mother purchased the property and that the gate had been locked ever since.[3] Miranda, however, testified the gate was unlocked until he locked it in 2012. In addition, a witness who lived on Miranda's property from 1979 to 1993 testified that she and her family used the path and gate and that the gate was never locked, which refuted Aguilar's testimony the gate had been locked since 1975. The jury was entitled to credit the testimony of Miranda and Aguilar's former neighbor and discredit Aguilar's testimony. (See *Acosta v. MAS Realty, LLC* (2023) 96 Cal.App.5th 635, 650 [we "'defer to the trier of fact's determination of the weight and credibility of the evidence'"]; *Felgenhauer v. Soni*, *supra*, 121 Cal.App.4th at p. 449 [the "'trier of fact is not required to believe even uncontradicted testimony'"].)[4]

---

[3] Aguilar testified he posted the "no trespassing" sign in 2018, which was after Miranda had acquired his prescriptive easement.

[4] Aguilar also relies on a June 8, 2015 text message from Miranda that stated Aguilar's gate was locked and that asked for a key. But Miranda testified he was referring to a gate in the middle of Aguilar's property, not the gate at the end of the brick path.

10

b.     *Miranda's Use Was Adverse and Under*
       *Claim of Right*

Substantial evidence also supported the jury's finding by clear and convincing evidence Miranda's use of the path and gate was adverse and under claim of right.  "A use is '"adverse"' or made under a '"claim of right"' if the use is made without the landowner's explicit or implicit permission." (*Montecito Country Club, LLC v. Root, supra,* 118 Cal.App.5th at p.  1241 ; see *Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.)  Miranda acknowledged the brick path and gate were on Aguilar's property. Both Miranda and Aguilar testified Aguilar never gave Miranda permission to use the path or gate.

Aguilar argues Miranda's use was not adverse or under claim of right because Miranda rejected Aguilar's requests for permission to use the path and gate.  Aguilar contends that the "act of seeking consent and acknowledging Aguilar's ownership negates both hostility and claim of right" and that a "person who seeks permission concedes that the right to enter lies with the property owner."  Aguilar is incorrect on the law.  "Claim of right does not require a belief or claim that the use is legally justified. [Citation.]  It simply means that the property was used without permission of the owner of the land." (*Felgenhauer v. Soni, supra,* 121 Cal.App.4th at p. 450; see *Aaron v. Dunham, supra,* 137 Cal.App.4th at p. 1252 ["use of the road was made without express permission, qualifying it as adverse"]; cf. *McBride v. Smith, supra,* 18 Cal.App.5th at p. 1181 ["'Use with the owner's permission . . . is not adverse to the owner.'"].)[5]

---

[5]     The cases Aguilar cites—*Silacci v. Abramson, supra,* 45 Cal.App.4th 558 and *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296—do not support his contentions.  In fact,

C.	*The Trial Court Did Not Err in Denying Aguilar's Motion for Judgment Notwithstanding the Verdict*

Aguilar argues the trial court erred in denying his motion for judgment notwithstanding the verdict. "'"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion."'" (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192; see *Contreras v. Green Thumb Produce, Inc.* (2025) 116 Cal.App.5th 1251, 1259.) "Under this 'highly deferential' standard of review, we must 'accept all evidence supporting the trial court's order[,] . . . draw all reasonable inferences to affirm the trial court,' and '[w]e do not reweigh the evidence.'" (*Contreras*, at p. 1259; see *Kruthanooch v. Glendale Adventist Medical Center* (2022) 83 Cal.App.5th 1109, 1122.)

As discussed, substantial evidence supported the jury's finding by clear and convincing evidence Miranda acquired a prescriptive easement to use Aguilar's path and gate to move his trash and recycling bins. Therefore, the trial court did not err in denying Aguilar's motion for judgment notwithstanding the verdict.

---

*Silacci* makes clear a property owner can defeat a claim of prescriptive easement by granting permission, not by denying it: The property owner in *Silacci* "recorded a consent to use the property . . . to stop adverse use by" neighbors. (*Silacci*, at p. 561.)

12

D.     *The Trial Court Did Not Err in Denying Aguilar's Motion for a New Trial*

The trial court may grant a new trial on certain grounds "materially affecting the substantial rights" of a party, including "[i]nsufficiency of the evidence to justify the verdict."  (Code Civ. Proc., § 657, subd. 6.)  We review an order granting or denying a motion for a new trial for abuse of discretion.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859; *Guzman v. NBA Automotive, Inc.* (2021) 68 Cal.App.5th 1109, 1114.)

Aguilar argues the trial court abused its discretion in denying his motion for a new trial for three reasons: (1) the verdict was "against the weight of the evidence"; (2) the trial court "applied only a minimal 'substantial evidence' review" without "account[ing] for the clear and convincing standard"; and (3) the "verdict resulted in a miscarriage of justice."  As discussed, however, there was substantial evidence from which a reasonable factfinder could have found it highly probable Miranda's use of Aguilar's path and gate was open, notorious, continuous, adverse, and under claim of right for at least five years.  Therefore, the trial court did not abuse its discretion in denying Aguilar's motion for a new trial.

13

## DISPOSITION

The judgment is affirmed.  Miranda is to recover his costs on appeal.


                              SEGAL, Acting P. J.


We concur:



                 FEUER, J.



                 STONE, J.